UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHADNEY HAMER,

      Plaintiff,

v.

CAROL GRIFFS, EVONNE McGINTY,
DR. HERRO, ANZHELIKA KOOTNER,
CORIZON, J. RUBLEY, C UNIT STAFF,
JOHN DOE, and JANE DOE,

      Defendants.
_____/

Case No. 4:22-cv-12106
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

1

<u>**ORDER**</u>[1]
<u>**GRANTING IN PART AND DENYING IN PART**</u>
<u>**PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (ECF No. 25)**</u>
<u>**AND**</u>
<u>**REPORT AND RECOMMENDATION**</u>[2]
<u>**TO GRANT IN PART AND DENY IN PART**</u>
<u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 23)**</u>[3] [4]

I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff

Shadney Hamer (Hamer), proceeding *pro se*, is suing defendants Carol Griffes

(Griffes),[5] Evonne McGinty (McGinty), Dr. Herro (Herro), Anzhelika Kootner

---

[1] Under 28 U.S.C. § 636(b)(1)(A), the undersigned may resolve the motion to amend with an order because it is nondispositive.  *See Armengau v. Warden, London Corr. Inst.*, No. 2:19-CV-1146, 2021 WL 1975321, at *2 (S.D. Ohio May 18, 2021) (explaining that "[a] majority of the courts to consider the issue have concluded that a magistrate judge's order on a motion to amend involves a nondispositive matter, subject to review for clear error.") (collecting cases).

[2] Under 28 U.S.C. § 636(b)(1)(B), a magistrate judge must proceed by Report and Recommendation when referred a dispositive motion such as a motion for summary judgment.

[3] Upon review of the parties' papers, the undersigned deems these matters appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[4] Although the motion's title only mentions summary judgment, the motion also requests dismissal for failure to state a claim against defendant Carol Griffes.  This argument will be considered in full in the body of this Report and Recommendation.

[5] Spelling consistent with motion for summary judgment.

(Kootner), J. Rubley (Rubley), Corizon,[6] C Unit Staff,[7] John Doe, and Jane Doe

alleging violations of his First and Eighth Amendment rights, specifically saying

that he was denied access to medical attention and that he was retaliated against for

filing grievances. *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial

matters were referred to the undersigned. (ECF No. 43).

There are currently six pending motions in this case: (1) a motion for

summary judgment on the grounds of exhaustion by Michigan Department of

Corrections (MDOC) employees Griffes, Kootner, McGinty, and Rubley

(collectively, the MDOC defendants), (ECF No. 23); (2) Hamer's motion for leave

to file an amended complaint, (ECF No. 25); (3) Corizon's motion to dismiss,

(ECF No. 30); (4) Herro's motion to dismiss, (ECF No. 35); (5) Hamer's motion to

amend the complaint, (ECF No. 39); and (6) Corizon and Herro's motion for

withdrawal of attorney and for a 120-day stay, (ECF No. 62). The first and second

motion will be addressed below. The third, fifth, and part of the sixth motion were

addressed in the Report and Recommendation issued on April 5, 2023 (first R&R).

---

[6] Proceedings against Corizon have been stayed due to its ongoing bankruptcy proceedings. *See* ECF Nos. 51, 56.

[7] "C Unit Staff" is listed on the docket as a defendant; however, Hamer does not list C Unit Staff in either his original complaint or proposed amended complaint. (ECF No. 1, PageID.2-5; ECF No. 25, PageID.153-155). As such, it is recommended that C Unit Staff be terminated as a party because it does not appear that Hamer named this entity as a defendant.

The fourth and balance of the sixth motion – both relating to Herro – will be addressed at a later date.

For the reasons stated below, Hamer's motion for leave to amend the complaint, (ECF No. 25), will be GRANTED IN PART and DENIED IN PART. Furthermore, the undersigned RECOMMENDS that the MDOC defendants' motion for summary judgment, (ECF No. 23), be GRANTED IN PART and DENIED IN PART, that Griffes be DISMISSED WITH PREJUDICE, and that Kootner and Rubley be DISMISSED WITHOUT PREJUDICE.  If these recommendations are adopted, Hamer's claims against McGinty, Herro and Corizon/Wellpath would remain at this time.

## II.    Hamer's Motion for Leave to Amend the Complaint

After the MDOC defendants filed their motion for summary judgment, Hamer filed a motion for leave to amend the complaint because he wanted to avoid having his case dismissed "solely based on conclusory allegations instead of proper factual allegations."  (ECF No. 25, PageID.151-152).  The undersigned will address this motion first, because if granted, the MDOC defendants' motion for summary judgment, (ECF No. 23), must be considered in light of the amended allegations.  For the reasons outlined below, Hamer's motion for leave to amend the complaint will be granted in part.

4

A.    Legal Standard

Amendments to pleadings before trial are governed by Federal Rule of Civil

Procedure 15(a).  Hamer can no longer amend his complaint as a matter of course

under Rule 15(a)(1), instead he must proceed under Rule 15(a)(2) which requires

either "the opposing party's written consent or the court's leave."  The rule

provides that "[t]he court should freely give leave when justice so requires."  Fed.

R. Civ. P. 15(a)(2).  "Because Rule 15(a)(2) directs courts to 'freely give leave

when justice so requires,' the rule embodies a 'liberal amendment policy.' "

*Brown v. Chapman*, 814 F.3d 436, 442-443 (6th Cir. 2016) (quoting *Morse v.*

*McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

"Despite this policy, denial may be appropriate when there is 'undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing

party by virtue of allowance of the amendment, futility of amendment, etc.' "

*Brown*, 814 F.3d at 443 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "To

deny a motion to amend, a court must find 'at least some significant showing of

prejudice to the opponent.' "  *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir.

2008) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

B.    Application

Hamer filed the motion to amend approximately three months after the case

5

began and less than a week after the MDOC defendants filed their motion for summary judgment.  Additionally, no defendant filed a response in opposition to Hamer's motion for leave to amend the complaint.

Given the liberal amendment policy of Rule 15(a)(2), justice requires that Hamer's motion for leave to amend the complaint be granted, especially considering the absence of any evidence suggesting either undue prejudice or dilatory motive.  Additionally, this is Hamer's first request to amend his complaint. To the extent that amendment may be futile as to some defendants because the undersigned recommends their dismissal below, the proposed amended complaint is not futile as a whole because it helps clarify and expand upon the factual allegations contained in the complaint.  These clarifications and additional facts help the Court better understand Hamer's allegations and the relevant timeline, meaning that even if some defendants are dismissed, the proposed amended complaint is not futile.

Hamer's motion for leave to amend the complaint is thus GRANTED IN PART and DENIED IN PART.  The motion is granted as to all allegations except Hamer's allegations against Corizon.  This is because in the first R&R it was recommended that Corizon be dismissed as a defendant and that Wellpath Health Services (Wellpath) be added as a defendant in its place.  *See* ECF No. 64.  Should the first R&R be adopted, then Hamer's amended complaint will be considered the

6

operative complaint, but the Court will consider the allegations involving Corizon to refer to Wellpath instead.  For the sake of clarity, these entities will be referred to as Corizon/Wellpath below.

### III.    The MDOC Defendants' Motion for Summary Judgment

### A.    Background

### 1.    Amended Complaint

The following facts are gleaned from Hamer's amended complaint.[8]

Hamer is an inmate in MDOC custody.  During the relevant events, he was incarcerated at Charles Egeler Reception (RGC).  (ECF No. 25, PageID.154).  Hamer was housed in a medical unit (C Unit) because he suffers from allergies that could cause anaphylaxis.  (*Id.*).

Kootner and Rubley were members of the RGC medical staff.  (*Id.*, PageID.153-154).  John Doe and Jane Doe were also RGC medical staff members, but Hamer does not know their names.  (*Id.*, PageID.154).  Griffes was a state administrative manager and her job duties included arranging out-of-facility medical care for RGC inmates.  (*Id.*).  McGinty was a health unit manager.  (*Id.*, PageID.155).  Herro was a doctor assigned to C Unit, and Corizon/Wellpath is a private entity contracted by the MDOC to provide medical services to inmates.

---

[8] Hamer's amended complaint sets forth a very detailed narrative of the events at issue in this case.  Only the factual allegations necessary for consideration of the instant motions will be summarized.

(*Id*., PageID.154).

On April 12, 2022, Hamer injured his left ankle while playing basketball. (*Id*., PageID.155).  He immediately returned to the C Unit and was examined by Kootner, a registered nurse.  (*Id*.).  Kootner gave Hamer a 24-hour ice detail and advised him to stay off his ankle until the swelling and pain subsided and also told him to ice his ankle for 15 to 20 minutes as soon as possible.  (*Id*.).  Hamer requested pain killers, crutches, a wheelchair, and/or an ACE bandage, but these requests were all denied.  (*Id*.).

The next morning, on April 13, 2022, Hamer asked John Doe for an extension of his ice detail.  (*Id*.).  McGinty denied Hamer's request for an extension.  (*Id*.).  Hamer then sent a health care kite[9] explaining that he had "sprained, strained, or torn [his] [A]chilles."  (*Id*., PageID.156).[10]  He also explained that he had been denied treatment including over-the-counter pain killers and/or anti-inflammatories and ice.  (*Id*.).

A day later, on April 14, 2022, Hamer filed a Step I grievance against "McGinty for denying him ice for the gross swelling on his ankle."  (*Id*.,

---

[9] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance.  *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

[10] Hamer mistakenly wrote in the kite that his injury occurred on April 11, 2022, instead of April 12, 2022.  (ECF No. 25, PageID.155-156).

PageID.156).  Then, on April 15, 2022, Hamer asked Rubley, a registered nurse, to examine his ankle, but she refused, telling him that he needed to wait for McGinty to arrive.  (*Id*.).  Later that day, Hamer filed another Step I grievance against McGinty.  (*Id*., PageID.157).  A few hours later, McGinty issued Hamer an "out of place ticket" for asking Rubley to examine his ankle.  (*Id*., PageID.158).[11]

The following day, on April 16, 2022, Kootner and Rubley examined Hamer's ankle and issued him a wheelchair to be used for two days.  (*Id*.).  The same day, Hamer wrote another kite asking to see a doctor and receive an MRI and/or x-ray.  (*Id*., PageID.158-159).  He also filed another Step I grievance against McGinty for denying him medical services.  (*Id*., PageID.159).  In this grievance, Hamer explained that a nurse, whose name he did not know, told him that McGinty had ordered the medical staff to refuse Hamer medical treatment for his ankle.  (*Id*.).  Hamer said that he felt retaliated against.  (*Id*.).

On April 17, 2022, Melissa Bowman (Bowman) prescribed Hamer both ibuprofen and Tylenol to help reduce pain and swelling.  (*Id*.).  Bowman never spoke to nor examined Hamer.  (*Id*.).  Later that day, Kootner sent Hamer a kite instructing him on how to take the newly prescribed medications.  (*Id*., PageID.159-160).

---

[11] Hamer was later found guilty on this misconduct ticket after being told that camera footage could not be reviewed for a Class III ticket.  (ECF No. 25, PageID.158).

April 19, 2022, the day Hamer had been scheduled to see a doctor, came and went without Hamer being seen. (*Id.*, PageID.160). A few days later, on April 22, 2022, Hamer wrote a healthcare request explaining that he never saw a doctor on April 19, 2022, even though he had previously been told that he would see one on that day. (*Id.*).

On April 26, 2022, two weeks after Hamer injured his ankle, he was examined by Herro. (*Id.*). Hamer requested an x-ray and Herro said that one would be done over the course of the next couple of days. (*Id.*, PageID.160-161). Herro also asked Hamer to sign off on a grievance that he had filed against McGinty. (*Id.*, PageID.161). Hamer did so because McGinty threatened to retaliate against him if he refused to sign. (*Id.*). Hamer later sent a kite to Griffes about this incident. (*Id.*).

On May 5, 2022, Hamer sent another kite explaining that his ankle was still swollen and painful. (*Id.*). Hamer also still had not had either an MRI or x-ray done. (*Id.*). Finally, sometime between May 19 and 21, 2022, Hamer was transferred to the Thumb Correctional Facility (TCF).

### 2. Step III Grievance Report

The MDOC defendants submitted Hamer's Step III Grievance Report to the Court as an exhibit to their motion. (ECF No. 23-3). The report shows that Hamer pursued only one relevant grievance through Step III of the MDOC's process.

10

That grievance is RGC-22-04-0810-28E (RGC-810).

In RGC-810, Hamer wrote that he sprained his ankle and/or Achilles playing basketball and that he spoke to several medical staff members about this injury. (*Id*., PageID.141).  After examining his ankle, one of the female registered nurses asked McGinty, the head nurse, what to do.  (*Id*.).  McGinty told her to deny Hamer's request for ice detail and a crutch.  (*Id*.).  McGinty never examined Hamer.  (*Id*.).

Griffes was one of the Step I respondents to the grievance.  (*Id*., PageID.142).  She reviewed Hamer's electronic health record and explained that the examining nurses did not note any swelling on April 12, 2022, or April 16, 2022.  (*Id*.).  She also said that a nursing note from April 13, 2022, stated that Hamer did not request ice detail.  (*Id*.).  Ultimately, she denied the grievance, writing: "The prisoner has and will continue to receive all necessary medical treatment."  (*Id*.).

## B.    The MDOC Defendants' Arguments

The MDOC defendants' motion contains two arguments: (1) Griffes should be dismissed as a defendant because Hamer failed to state a claim against her, and (2) all of the MDOC defendants should be dismissed as defendants because Hamer failed to exhaust his administrative remedies as to each of them.  Each argument will be addressed in turn below.

11

1.      Dismissal for Failure to State a Claim

a.      Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

12

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  However, even in pleadings drafted by *pro se* parties, " 'courts should not

have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. . . .  [N]either may the Court 'conjure up unpled allegations[.]'

" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

### b.    Application

Griffes argues that Hamer has failed to state a claim against her because he

does not allege how she was personally involved in the decision to not provide him

with adequate medical care.  In order to state a claim for relief for a constitutional

violation under § 1983, a plaintiff must "allege that the defendants were personally

involved in or responsible for the alleged deprivation of his federal rights."

*Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 368 (6th Cir. 2004) (citing *Rizzo v.

Goode*, 423 U.S. 362, 373-377 (1976) and *Hall v. United States*, 704 F.2d 246, 251

(6th Cir. 1983)); *see also Frazier v. Mich.*, 41 F. App'x 762, 764 (6th Cir. 2002)

("[A] complaint must allege that the defendants were personally involved in the

alleged deprivation of federal rights.").

13

Hamer does not explain how Griffes was personally involved in his medical care.  It appears that he named her as a defendant because she was a Step I respondent for RGC-810.  However, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Manley v. Smith*, No. 1:11–cv–163, 2012 WL 967569, at *4 (W.D. Mich. Feb. 14, 2012) (recommending granting registered nurse's motion for summary judgment "whose only role involved the denial of an administrative grievance" even though "plaintiff contend[ed] that [the nurse] delayed [his] access to medical care when [she] denied the grievance"), *report and recommendation adopted*, 2012 WL 967099 (W.D. Mich. 21, 2012).

In sum, because "[p]articipation in the processing of administrative remedies does not expose a corrections employee to a claim that she acquiesced in the conduct complained of[,]" *Israfil v. Parks*,  No. 2:10–cv–132, 2011 WL 2491516, at *2 (S.D. Ohio May 2, 2011), *report and recommendation adopted*, 2011 WL 2491574 (S.D. Ohio June 22, 2011), Hamer's claims against Griffes should be dismissed with prejudice.

14

2.      Summary Judgment for Failure to Exhaust

a.      Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Hamer is *pro se* does not reduce his obligations under Rule 56.

Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

### b.     Exhaustion Requirements

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted).  Requiring exhaustion gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances, and "a grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted." *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).  "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94.  To be sufficient, a grievance need not "allege a specific legal theory or facts

17

that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

MDOC PD 03.02.130 sets forth time limits regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution. (*Id*. at ¶¶ Q, W.)  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. (*Id*. at ¶¶ U, DD.)  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. (*Id*. at ¶¶ U, HH.)  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. (*Id*.)

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022).  "Generally, Step III responses will be responded to within 60 business days."  MDOC PD 03.02.130 ¶ II.  "The grievance process is exhausted once the final response is issued in Step III."  *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

18

c.      Application

Here, RGC-810 is the only relevant grievance that was appealed through

Step III.  This grievance only identified one individual – McGinty.  MDOC PD

03.02.130 ¶ S requires a prisoner to include the "names of all those involved in the

issue being grieved."  Additionally, the Sixth Circuit has "explained that a prisoner

ordinarily does not comply with MDOCPD 130—and therefore does not exhaust

his administrative remedies under the PLRA—when he does not specify the names

of each person from whom he seeks relief."  *Mattox v. Edelman*, 851 F.3d 583,

590-591 (6th Cir. 2017).[12]  Accordingly, Kootner and Rubley are entitled to

summary judgment because Hamer did not name them in his Step I grievance and

thus failed to exhaust his administrative remedies against them.

Hamer did, however, name McGinty in his Step I grievance.  This grievance

was filed by Hamer on April 13, 2022, and was received on April 18, 2022.

Griffes and the other respondent did not review Hamer's grievance until May 18,

2022, well after the 10-business-day timeframe contemplated by MDOC PD

03.02.130 ¶ DD.  Furthermore, the grievance form indicates that the Step II

response was not returned to Hamer until May 23, 2022.  The MDOC defendants

state in their reply brief that Hamer was transferred from RGC to TCF on May 19,

---

[12] Although *Mattox* addressed an earlier version of PD 03.02.130, it involved the
interpretation of language that is identical in both the rescinded and current
versions of the policy directive.

19

2022.  (ECF No. 37, PageID.390).

On the grievance appeal form, Hamer wrote at the top of the form that he received the Step I response on June 28, 2022, and sent it back the next day, on June 29, 2022.  (ECF No. 23-3, PageID.140).  The form was stamped as received on July 18, 2022, and was rejected as "untimely" on the same day.  (*Id.*).

Hamer appealed the Step II rejection, writing in relevant part that he "ha[s] no control over mail therefore it's timely."  (*Id.*).  Hamer's Step III appeal was received on August 4, 2022, and the Step II rejection was upheld on August 22, 2022.  (*Id.*, PageID.139).

Although the MDOC defendants argue that "Hamer's Step II appeal was untimely beyond any reasonable view of the circumstances[,]" they put forth no evidence in support of this assertion.  Instead, they speculate about how long it may take mail to reasonably arrive at various locations.  This is insufficient.  The MDOC defendants have the "burden to plead and prove by a preponderance of the evidence" that Hamer failed to properly exhaust his administrative remedies.  *Lee*, 789 F.3d at 677.  They have not done so as to Hamer's claims against McGinty.

The MDOC acknowledges that transfers between correctional facilities are a valid reason for delays in the grievance process.  MDOC PD 03.02.130 ¶ J provides that a "grievance shall not be rejected if there is a valid reason for the delay; e.g., transfer."  Hamer was indisputably transferred around the same time as

the Step I response was returned to him.  Given this, a reasonable jury could conclude that the Step I response was delayed in getting to Hamer.

Moreover, Hamer wrote on the appeal form that he did not receive the Step I response until June 28, 2022.  (ECF No. 23-3, PageID.140).  The MDOC defendants offer nothing to counter this evidence.  Accordingly, McGinty has not shown by a preponderance of the evidence that Hamer failed to properly exhaust his administrative remedies as to her.  *See Carter v. Supnick*, No. 2:18-cv-00003, 2019 WL 613273, at *4 (W.D. Mich. Jan. 7, 2019) (recommending denying summary judgment where the "Plaintiff ha[d] shown that his untimely filings were the result of his transfer to a new prison and the late date that he received the Step I responses"), *report and recommendation adopted*, 2019 WL 588080 (W.D. Mich. Feb. 13, 2019).  Thus, the undersigned recommends that only Kootner and Rubley be dismissed without prejudice for Hamer's failure to exhaust administrative remedies.

## V.    Conclusion

For the reasons stated above, Hamer's motion for leave to amend the complaint, (ECF No. 25), is GRANTED IN PART and DENIED IN PART. Furthermore, it is RECOMMENDED that the MDOC defendants' motion for summary judgment, (ECF No. 23), be GRANTED IN PART and DENIED IN PART and that Griffes be DISMISSED WITH PREJUDICE and that Kootner and

Rubley be DISMISSED WITHOUT PREJUDICE.  If this recommendation is adopted, Hamer's claims against McGinty, Herro,[13] and Corizon/Wellpath would remain at this time.

Dated: April 11, 2023                         s/Kimberly G. Altman
Detroit, Michigan                             KIMBERLY G. ALTMAN
                                              United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

---

[13] Herro's motion to dismiss will be addressed at a later date.

22

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 11, 2023.

s/Michael E. Lang
on behalf of CAROLYN M. CIESLA
Case Manager