UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHADNEY HAMER,

    Plaintiff,

v.

CAROL GRIFFS, EVONNE McGINTY,
DR. HERRO, ANZHELIKA KOOTNER,
CORIZON, J. RUBLEY, C UNIT STAFF,
JOHN DOE, and JANE DOE,

    Defendants.

_____/

Case No. 4:22-cv-12106
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION**[1]
**TO GRANT**
**DEFENDANT DR. HERRO'S MOTION TO DISMISS**
**AND, ALTERNATIVELY,**
**MOTION FOR SUMMARY JUDGMENT (ECF No. 35)**[2]

I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Shadney Hamer (Hamer), proceeding *pro se*, is suing defendants Carol Griffes

---

[1] Under 28 U.S.C. § 636(b)(1)(B), a magistrate judge must proceed by Report and Recommendation (R&R) when referred a dispositive motion such as a motion to dismiss or for summary judgment.

[2] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

(Griffes),[3] Evonne McGinty (McGinty), Dr. Herro (Herro), Anzhelika Kootner (Kootner), J. Rubley (Rubley), Corizon,[4] C Unit Staff,[5] John Doe, and Jane Doe, alleging violations of his First and Eighth Amendment rights, specifically that he was denied access to medical attention and that he was retaliated against for filing grievances. See ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned. (ECF No. 43).

Before the Court is Herro's motion to dismiss and, alternatively, for summary judgment. (ECF No. 35). This motion is fully briefed and ready for consideration. (ECF Nos. 40, 45, 52, 63). For the reasons stated below, it is RECOMMENDED that Herro's motion be GRANTED and that he be DISMISSED as a defendant. If this recommendation is adopted along with the recommendations contained in the undersigned's prior Reports and Recommendations (R&Rs), (ECF Nos. 64, 65), then Hamer may proceed with his claims against Wellpath and McGinty.

---

[3] Spelling consistent with prior motion for summary judgment.

[4] Proceedings against Corizon have been stayed due to its ongoing bankruptcy proceedings. See ECF Nos. 51, 56.

[5] In an April 11, 2023 R&R, the undersigned recommended that "C Unit Staff" be terminated as a defendant because Hamer did not name this entity as a defendant in either his original or amended complaint. (ECF No. 65, PageID.658, n.7).

## II. Background

### A. Amended Complaint

The relevant facts from the amended complaint were summarized in the April 11, 2023 R&R as follows:

> Hamer is an inmate in MDOC custody. During the relevant events, he was incarcerated at Charles Egeler Reception (RGC). (ECF No. 25, PageID.154). Hamer was housed in a medical unit (C Unit) because he suffers from allergies that could cause anaphylaxis. (*Id*.).
>
> Kootner and Rubley were members of the RGC medical staff. (*Id*., PageID.153-154). John Doe and Jane Doe were also RGC medical staff members, but Hamer does not know their names. (*Id*., PageID.154). Griffes was a state administrative manager and her job duties included arranging out-of-facility medical care for RGC inmates. (*Id*.). McGinty was a health unit manager. (*Id*., PageID.155). Herro was a doctor assigned to C Unit, and Corizon/Wellpath is a private entity contracted by the MDOC to provide medical services to inmates. (*Id*., PageID.154).
>
> On April 12, 2022, Hamer injured his left ankle while playing basketball. (*Id*., PageID.155). He immediately returned to the C Unit and was examined by Kootner, a registered nurse. (*Id*.). Kootner gave Hamer a 24-hour ice detail and advised him to stay off his ankle until the swelling and pain subsided and also told him to ice his ankle for 15 to 20 minutes as soon as possible. (*Id*.). Hamer requested pain killers, crutches, a wheelchair, and/or an ACE bandage, but these requests were all denied. (*Id*.).
>
> The next morning, on April 13, 2022, Hamer asked John Doe for an extension of his ice detail. (*Id*.). McGinty denied Hamer's request for an extension. (*Id*.). Hamer then sent a health care kite explaining that he had "sprained, strained, or torn [his] [A]chilles." (*Id*., PageID.156). He also explained that he had been denied treatment including over-the-counter pain killers and/or anti-inflammatories and ice. (*Id*.).
>
> A day later, on April 14, 2022, Hamer filed a Step I grievance against

3

"McGinty for denying him ice for the gross swelling on his ankle." (*Id.*, PageID.156). Then, on April 15, 2022, Hamer asked Rubley, a registered nurse, to examine his ankle, but she refused, telling him that he needed to wait for McGinty to arrive. (*Id.*). Later that day, Hamer filed another Step I grievance against McGinty. (*Id.*, PageID.157). A few hours later, McGinty issued Hamer an "out of place ticket" for asking Rubley to examine his ankle. (*Id.*, PageID.158).

The following day, on April 16, 2022, Kootner and Rubley examined Hamer's ankle and issued him a wheelchair to be used for two days. (*Id.*). The same day, Hamer wrote another kite asking to see a doctor and receive an MRI and/or x-ray. (*Id.*, PageID.158-159). He also filed another Step I grievance against McGinty for denying him medical services. (*Id.*, PageID.159). In this grievance, Hamer explained that a nurse, whose name he did not know, told him that McGinty had ordered the medical staff to refuse Hamer medical treatment for his ankle. (*Id.*). Hamer said that he felt retaliated against. (*Id.*).

On April 17, 2022, Melissa Bowman (Bowman) prescribed Hamer both ibuprofen and Tylenol to help reduce pain and swelling. (*Id.*). Bowman never spoke to nor examined Hamer. (*Id.*). Later that day, Kootner sent Hamer a kite instructing him on how to take the newly prescribed medications. (*Id.*, PageID.159-160).

April 19, 2022, the day Hamer had been scheduled to see a doctor, came and went without Hamer being seen. (*Id.*, PageID.160). A few days later, on April 22, 2022, Hamer wrote a healthcare request explaining that he never saw a doctor on April 19, 2022, even though he had previously been told that he would see one on that day. (*Id.*).

On April 26, 2022, two weeks after Hamer injured his ankle, he was examined by Herro. (*Id.*). Hamer requested an x-ray and Herro said that one would be done over the course of the next couple of days. (*Id.*, PageID.160-161). Herro also asked Hamer to sign off on a grievance that he had filed against McGinty. (*Id.*, PageID.161). Hamer did so because McGinty threatened to retaliate against him if he refused to sign. (*Id.*). Hamer later sent a kite to Griffes about this incident. (*Id.*).

On May 5, 2022, Hamer sent another kite explaining that his ankle was still swollen and painful. (*Id.*). Hamer also still had not had either an

4

MRI or x-ray done. (*Id*.). Finally, sometime between May 19 and 21, 2022, Hamer was transferred to the Thumb Correctional Facility (TCF).

(ECF No. 65, PageID.662-665 (internal footnotes omitted)).

### B.   Step III Grievance Report

The April 11, 2023 R&R also summarized the relevant information from Hamer's Step III Grievance Report. (ECF No. 65, PageID.665-666 (citing ECF No. 23-3)). That R&R explained "that Hamer pursued only one relevant grievance through Step III of the MDOC's process. That grievance is RGC-22-04-0810-28E (RGC-810)." (*Id*.). It further explained that

> [i]n RGC-810, Hamer wrote that he sprained his ankle and/or Achilles playing basketball and that he spoke to several medical staff members about this injury. ([ECF No. 23-3], PageID.141). After examining his ankle, one of the female registered nurses asked McGinty, the head nurse, what to do. (*Id*.). McGinty told her to deny Hamer's request for ice detail and a crutch. (*Id*.). McGinty never examined Hamer. (*Id*.).

(ECF No. 65, PageID.666).

### III.   Herro's Motion

Herro's motion contains two arguments: (1) he should be dismissed as a defendant because Hamer failed to state a claim against him and, alternatively, (2) he is entitled to summary judgment because Hamer failed to exhaust his administrative remedies against him. Each argument will be addressed in turn below.

5

A. Dismissal for Failure to State a Claim[6]

1. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[6] Following the filing of the instant motion, the Court granted Hamer leave to file an amended complaint. Even though the filing of an amended complaint typically moots a motion to dismiss the original complaint, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002) (citations omitted). Rather than "exalt[ing] form over substance and forc[ing] [Herro] to file a new motion to dismiss[,]" the undersigned will instead address Herro's arguments as applying to the amended complaint. *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 919 (E.D. Mich. 2022).

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

2.  Relevant Law

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the

7

other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Farmer*, 273 F.3d at 834. In *Farmer*, the Court held that the objective test requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 702.

3.   Application

The bulk of Herro's motion focuses on the subjective component of Hamer's deliberate indifference claim. As such, the undersigned will assume for purposes of the motion that the ankle injury Hamer sustained was sufficiently serious so as to satisfy the objective competent.

As alleged in the amended complaint, Hamer had an appointment with Herro a couple of weeks after injuring his ankle while playing basketball. At the appointment, Herro ordered an x-ray for Hamer's injured ankle but denied his request for crutches. (ECF No. 25, PageID.160-161). Herro also prescribed

8

Hamer Tylenol 2 and a week of ice detail. (*Id.*, PageID.25).

Hamer's deliberate indifference claim against Herro is premised on Herro's failure to order an immediate x-ray or MRI. (*Id.*, PageID.24-25). The Supreme Court has said that

> the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court. . . .

*Estelle*, 429 U.S. at 107. And in a case like this one, where the prisoner-plaintiff argued that a doctor "was deliberately indifferent in failing to ensure that his hand was x-rayed immediately," the court explained that "[t]he law in this circuit is clear, however, that [the prisoner-plaintiff's] disagreement with [the doctor] about the urgency of the x-ray does not rise to the level of deliberate indifference." *McCray v. Al-Saeedi*, No. 14-12975, 2015 WL 13741899, at *5 (E.D. Mich. July 31, 2015), *report and recommendation adopted*, 2015 WL 6561714 (E.D. Mich. Oct. 30, 2015). The same is true here.

Even if an x-ray of Hamer's ankle should have been performed sooner, Herro's failure to ensure an x-ray happened quickly enough does not constitute deliberate indifference. At best, it may constitute medical malpractice under Michigan law. Regardless, Hamer has failed to state a claim against Herro for a violation of his rights under the Eighth Amendment and Herro should accordingly

9

be dismissed with prejudice as a defendant from this case.

### B. Summary Judgment for Failure to Exhaust

The issue of whether Hamer properly exhausted his administrative remedies against Herro need not be reached because the undersigned has already concluded that Herro is entitled to dismissal with prejudice because Hamer failed to state a claim against him. Nonetheless, the issue will be considered below for the sake of completeness.

#### 1. Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of

10

fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Hamer is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

2. Exhaustion Requirements

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and

11

citations omitted). Requiring exhaustion gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances, and "a grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted." *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). "Under the [Michigan] Department of Corrections'

12

procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

MDOC PD 03.02.130 sets forth time limits regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution. (*Id*. at ¶¶ Q, W.) If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. (*Id*. at ¶¶ U, DD.) If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. (*Id*. at ¶¶ U, HH.) The Step III form shall be sent within ten business days after receiving the Step II

response, or if no Step II response was received, within ten business days after the date the Step II response was due. (*Id.*)

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022). "Generally, Step III responses will be responded to within 60 business days." MDOC PD 03.02.130 ¶ II. "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

### 3. Application

As explained in the April 11, 2023 R&R,

> RGC-810 is the only relevant grievance that was appealed through Step III. This grievance only identified one individual – McGinty. MDOC PD 03.02.130 ¶ S requires a prisoner to include the "names of all those involved in the issue being grieved." Additionally, the Sixth Circuit has "explained that a prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief." *Mattox v. Edelman*, 851 F.3d 583, 590-591 (6th Cir. 2017).

(ECF No. 65, PageID.674 (internal footnote omitted)). Moreover, Hamer filed RGC-810 more than a week before his appointment with Herro. Accordingly, RGC-810 cannot be said to have properly exhausted any claims against Herro.

Hamer, however, argues that his failure to properly exhaust his administrative remedies against Herro should be excused because the grievance process was unavailable to him. He premises this argument on his allegation that Herro pressured him to sign off on a grievance he had previously filed against

14

McGinty. (ECF No. 25, PageID.161). Hamer explained that he did as Herro requested because McGinty threatened to retaliate against him if he refused to sign off. (*Id*.).

Hamer is correct that prisoners need only "exhaust available remedies," and they need "not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). A grievance process is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644. The federal courts of appeals have acknowledged the unavailability of grievance processes in "a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures." *Id*.

Here, however, the grievance process was not unavailable to Hamer. Even assuming *arguendo* that his allegation regarding Herro pressuring him to sign off on a grievance against McGinty is true, this does not mean the grievance process was unavailable to Hamer from that point forward. Hamer's amended complaint shows that he was not afraid to continue speaking out regarding the issues underlying this case. Indeed, after Herro allegedly told Hamer to sign off on the grievance against McGinty, Hamer sent a kite to Griffes informing her of this incident. (ECF No. 25, PageID.161).

Perhaps, a more accurate understanding of Hamer's argument regarding the

15

unavailability of the grievance process is that he believed there was no point in filing a grievance against Herro given the lackluster response to his prior grievances concerning his ankle injury. However, "[a] prisoner's subjective belief that the grievance process would be ineffective cannot excuse failure to exhaust the prison grievance procedure prior to filing suit." *Stevens v. Potila*, No. 14-CV-10863, 2015 WL 1245889, at *3 (E.D. Mich. Mar. 18, 2015) (citing *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) ("To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile.") (internal quotation marks and citations omitted)).

In sum, Hamer was required to properly exhaust his administrative remedies against Herro before suing him. The grievance process was not unavailable to Hamer. Additionally, the requirement of proper exhaustion is not excused even if Hamer believed the grievance process would be ineffective. Thus, Herro is entitled to summary judgment in addition to dismissal with prejudice as explained above.

## V.  Conclusion

For the reasons stated above, it is RECOMMENDED that Herro's motion to dismiss and, alternatively, for summary judgment, (ECF No. 35), be GRANTED

and that he be DISMISSED WITH PREJUDICE as a defendant. If this recommendation and the recommendations contained in the undersigned's last two R&Rs, (ECF Nos. 64, 65), are adopted, then Hamer may proceed with his claims against Wellpath and McGinty.

Dated: April 28, 2023  s/Kimberly G. Altman
Detroit, Michigan  KIMBERLY G. ALTMAN
United States Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Isaac v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 28, 2023.

                                                    s/Carolyn M. Ciesla
                                                  CAROLYN M. CIESLA
                                                  Case Manager