UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHADNEY HAMER,

     Plaintiff,

v.

EVONNE McGINTY,

     Defendant.

_____/

Case No.  4:22-cv-12106
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 89)[1]

### I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff Shadney Hamer (Hamer), proceeding *pro se*, sued multiple defendants under the First and Eighth Amendments alleging that they denied him access to medical care and retaliated against him for filing grievances.  *See* ECF No. 69.  Following motion practice, Evonne McGinty (McGinty) is the only remaining defendant.  At the time of the alleged conduct, Hamer was incarcerated at Charles Egeler Reception (RGC).  However, he was released in August 2023 and is currently on

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

parole.[2]  Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned.  (ECF No. 43).

Before the Court is McGinty's motion for summary judgment, (ECF No. 89).  Hamer has responded to the motion, (ECF No. 91), and McGinty has filed a reply, (ECF No. 93).  The motion is ready for consideration.  For the reasons that follow, the undersigned RECOMMENDS that McGinty's motion for summary judgment be GRANTED.  If this recommendation is adopted, the case will be closed.

## II.    Procedural History

Hamer filed his original complaint on September 7, 2022, against multiple defendants.  (ECF No. 1).  On December 15, 2022, McGinty and three other defendants filed a motion for summary judgment on the basis of exhaustion.  (ECF No. 23).  In a Report and Recommendation adopted by the district judge on May 5, 2023, (ECF No. 70), the undersigned recommended granting the motion as to the three other defendants and denying it as to McGinty, against whom Hamer had exhausted one grievance through Step III, RGC-22-04-0810-28E (RGC-810).  (ECF No. 65).  Afterwards, the remaining defendants were also dismissed, (ECF Nos. 70, 76, 80), leaving only Hamer's claim against McGinty.

---

[2] This information is based on a search of the Michigan Department of Correction's Offender Tracking Information System site.  *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=787762.

### III.    Background

### A.    Allegations

The following facts are gleaned from Hamer's second amended complaint, which he filed on May 1, 2023.[3]  (ECF No. 69).

On April 12, 2022, Hamer injured his Achilles tendon while playing basketball.  (ECF No. 69, PageID.709).  That day, Hamer was provided ice pack detail for his ankle by one of the registered nurses.  (*Id.*).  On April 13, 2022, Hamer asked for an extension of his ice detail and McGinty denied it "without examining, triaging, or diagnosing [Hamer] herself."  (*Id.*).  Hamer then submitted a grievance regarding McGinty's refusal to provide him ice or a crutch without observing him first.[4]  (*Id.*, PageID.710).  On April 15, 2022, Hamer asked a nurse to be seen and was told that he would have to wait on McGinty.  (*Id.*).  Hamer then submitted another grievance regarding McGinty and her staff's refusal to address his pain.  (*Id.*, PageID.711).  Later that day, Hamer "was written an out of place misconduct" by McGinty for asking for medical assistance without permission, even though a control center officer gave Hamer permission.  (*Id.*, PageID.711-712).  Hamer submitted another grievance against McGinty on April 16, 2022, for

---

[3] Hamer's complaint was filed against multiple defendants, but only those facts relevant to Hamer's claims against McGinty will be discussed.

[4] This is grievance RGC-810, which the undersigned previously determined to be the only exhausted claim against McGinty.  *See* ECF No. 65.

3

"instruct[ing] her staff not to treat [him] if it had anything to do with [his] ankle."
(*Id.*, PageID.713).

On April 26, 2022, Hamer was examined by Dr. Herro.  After examining
Hamer, Dr. Herro "asked blatantly if [Hamer] would sign off on the grievance"
that Hamer had written on McGinty.  (*Id.*, PageID.716-717).  Hamer was ushered
into McGinty's office, where McGinty said, "sign off on the grievance or [I'll] put
you in D.W.H. until I can get you transferred."  (*Id.*, PageID.717).  Hamer signed,
not wanting to be retaliated against, but he "intentionally signed in the wrong place
in hopes of contacting a higher up about the retaliation tactics."  (*Id.*, PageID.717-
718).

### B.    Medical Evidence

McGinty has attached Hamer's medical records to her motion for summary
judgment.  (ECF No. 89-2).  The records reflect that on April 12, 2022, Hamer was
seen by Anzhelika Kootner (Kootner), a registered nurse, for a potential sprained
ankle.  (*Id.*, PageID.910).  Kootner noted that Hamer was ambulatory, able to step
on his left foot, and able to walk without difficulty.  (*Id.*).  On assessment, there
was no visible injury or swelling, and Hamer denied ankle pain on palpitation.
(*Id.*).  Kootner recommended that Hamer rest and ice the area.  (*Id.*).  Hamer was
instructed to report to medical if pain or swelling to his ankle increased.  (*Id.*).

On April 13, 2022, Hamer requested to come to the nurse's station for his

EpiPen, and the nurse noted that he was "ambulatory with a steady gait." (*Id.*, PageID.904).   On April 16, 2022, Hamer was again seen by Kootner for ankle pain, where he stated that he could not even step on his left foot anymore. (*Id.*, PageID.902).  Kootner noted that the skin over his joints and muscles was "without swelling, erythema, deformity, or asymmetry." (*Id.*, PageID.903).  She observed how Hamer moved both legs and noted that there were no limitations in his active range of motion. (*Id.*).  She recommended that Hamer elevate his left foot and rest, and she provided a wheelchair for 48 hours to help with transportation. (*Id.*).  She noted that Hamer was scheduled to see the medical provider on April 19, 2022. (*Id.*).

Also on April 16, 2022, Hamer submitted a kite stating that he had an injury in his Achilles and asked to see a medical provider to get an MRI. (*Id.*, PageID.915).  He wrote that he was in severe pain and had not received ice or anti-inflammatories. (*Id.*).  He stated that he just received wheelchair detail "until Monday on hope of my x-ray," and that his cries were going unheard. (*Id.*). Kootner responded on April 17, 2022, stating that Hamer had already been assessed by a registered nurse on the same day he submitted the kite, and he had been given wheelchair detail until April 18, 2022. (*Id.*).  She noted that Hamer had been told to rest and elevate his left leg, and that Hamer was scheduled to see a medical provider on April 19, 2022. (*Id.*).  She also stated that nursing education

had been provided to Hamer advising him to rest and elevate his foot. (*Id.*).

On April 17, 2022, Hamer submitted a kite stating the same thing as the kite he submitted the previous day. (*Id.*, PageID.914). Kootner responded that Hamer also had an order from the medical provider to take Tylenol every 8 hours as needed for pain. (*Id.*). Also on April 17, 2022, Melissa Bowman, PA, made an administrative note explaining that a registered nurse from Hamer's unit had called asking for anti-inflammatory pain medication, and ibuprofen was prescribed. (*Id.*, PageID.901). On April 20, 2022, McGinty entered an administrative note, stating that she had observed Hamer on the camera walking through the day room to medical. (*Id.*, PageID.900). She wrote that Hamer

> was walking with a slight limp on both feet, standing straight up. By the time he got all the way across the day room he was walking normal and waving at inmates and talking to them. When he reached the E wing medical hallway, he stooped over and grabbed the wall and was barely able to walk. He was bent at the waist and holding the wall.

(*Id.*). On April 22, 2022, Hamer submitted a kite stating that he was told he would see a medical provider on April 19, 2022, but he still had not been seen. (*Id.*, PageID.913). He stated that his ankle was still swollen, tender, and painful, and that his wheelchair detail expired on April 18. (*Id.*). He said he almost got in trouble for using somebody else's crutch to assist him when he was in pain. (*Id.*). He said this was his fourth attempt to receive medical care. (*Id.*). George Anderson responded that he would schedule an appointment with a medical

provider.  (*Id.*).

On April 26, 2022, Hamer was seen by Dr. Frederick Herro (Dr. Herro). (*Id.*, PageID.898).  Dr. Herro noted that Hamer's ankle was swollen and tender. (*Id.*, PageID.899).  He prescribed ibuprofen for 14 days, Tylenol for one month, and ice detail for three days.  (*Id.*).  In his visit notes, Dr. Herro stated that he and Hamer "discussed a grievance" and Hamer "agree[d] his concerns were addressed" and would sign off on the grievance.  (*Id.*).

On May 5, 2022, Hamer submitted a kite asking that his ankle be evaluated because "it does not feel right it's still swollen and it hurts big time."  (*Id.*, PageID.912).  Jeanna Hilborn, LPN, responded that she scheduled for a medical provider to review Hamer's chart.  (*Id.*).  On June 3, 2022, Hamer's ankle was x-rayed at Global Diagnostic Services, and Scott Logan, MD (Dr. Logan), documented that there was no evidence of an acute fracture, but recommended that if Hamer had persistent pain or "a radiographically occult fracture [was] clinically suspected," additional x-rays, MRI, or a CT scan should be considered in 10-14 days.  (*Id.*, PageID.917-918).  On August 9, 2022, Hamer received an ultrasound and Dr. Logan stated Hamer had possible tendinopathy of the left Achilles tendon. (*Id.*, PageID.916).  Dr. Logan noted that the need for an MRI should be determined

clinically.  (*Id.*).

### IV.   Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Hamer is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## V.     Discussion

### A.     Deliberate Indifference to a Serious Medical Need

#### 1.     Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

The objective component requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To do so, "the plaintiff must allege that the medical need at issue

9

is 'sufficiently serious.' " *Comstock*, 273 F.3d at 702-03 (quoting *Farmer*, 511 U.S. at 834).  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)).  A serious medical need only satisfies the objective element on its own "if doctors effectively provide no care for it." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021).  Where doctors provide some care and the plaintiff challenges it as inadequate, the plaintiff must show that the care provided was "grossly or woefully inadequate." *Id.* at 535.

Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703.

### 2.    Application

As discussed above, Hamer has only exhausted one deliberate indifference claim against McGinty: RGC-810.  In RGC-810, Hamer states that when he asked one of the registered nurses for ice on April 13, 2022, the nurse went to consult with McGinty.  (ECF No. 69, PageID.746).  McGinty then told the nurse to deny Hamer's request for ice or a crutch even though McGinty had not observed Hamer

herself.  (*Id.*).

Hamer cannot satisfy either element of an Eighth Amendment deliberate indifference claim on these facts.  For the objective element, it is disputed whether Hamer's ankle qualified as a serious medical need at the time of this McGinty's alleged conduct, which occurred on April 13, 2022.  At that point, Hamer had not been diagnosed by a doctor as needing medical attention, and it is questionable whether a lay person would have recognized the necessity for a doctor's attention. Hamer had been seen the day before, on April 12, 2022, and at that time, Kootner noted that Hamer was ambulatory and walking without difficulty, and his ankle was not visibly injured or swollen.  (ECF No. 89-2, PageID.910).  On April 13, 2022, the same day as the grieved conduct, Hamer was noted by a nurse as being "ambulatory with a steady gait."  (*Id.*, PageID.904).  Three days after the grieved conduct, on April 16, 2022, Hamer was seen by Kootner who again noted that his ankle was "without swelling, erythema, deformity, or asymmetry.  (*Id.*, PageID.903).  Further, an x-ray performed in July 2022 found that Hamer's ankle was not fractured.  Similar ankle injuries, "where there is no evidence of fracture or dislocation, have frequently been found by courts not to constitute serious medical conditions."  *Wirtz v. Buchanan*, No. 2:11-CV-1131, 2013 WL 372462, at *7 (S.D. Ohio Jan. 30, 2013), *report and recommendation adopted*, 2013 WL

11

3155775 (S.D. Ohio June 20, 2013).

Even if Hamer's ankle injury was a serious medical need, he was provided some care for it and therefore must show that the care he did receive was woefully inadequate.  He has not done so.  On the same day as his ankle injury, Hamer was seen by a registered nurse who noted that his ankle was not swollen, and that Hamer did not experience pain on palpitation.  She also provided him with ice. Hamer alleges that the next day, April 13, 2022, he requested more ice or a crutch and was denied by McGinty.  That same day, when Hamer was seen in healthcare for his EpiPen, the nurse noted he was "ambulatory with a steady gait."  Then on April 16, 2022, Hamer was again seen by a registered nurse who provided him with a wheelchair for 48 hours after noting that there did not appear to be swelling or limitations in his range of movement.

Based on these treatment records, Hamer would need to "present expert medical evidence describing what a competent doctor would have done and why the chosen course was not just incompetent but grossly so" to create a genuine issue of material fact on this claim.  *Phillips*, 14 F.4th at 536.  Hamer has not done so.[5]  Even if McGinty did tell the nurse to deny Hamer's request for ice or a crutch

---

[5] Hamer argues that swelling may take multiple days to appear, and Dr. Herro noted that his ankle was swollen during a visit on April 26, 2022.  (ECF No. 91, PageID.946-947).  This does not prove that McGinty's alleged decision to deny ice or a crutch was grossly incompetent considering that Hamer's ankle was not swollen at the time and he was documented as ambulatory that same day.

12

for the day, which is disputed because Hamer admits that he did not actually hear anything McGinty said, (ECF No. 89, PageID.875-878), the treatment Hamer received for his ankle was not "so cursory as to amount to no treatment at all," considering the attention Hamer had received the day before, the nurse's note from the same day documenting that he was ambulatory, and the care that he received a few days later. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009) (internal quotation marks and citation omitted).  Nor was McGinty's alleged denial of ice and a crutch "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).  As such, Hamer has not satisfied the objective element of a deliberate indifference claim.

Hamer also has not satisfied the subjective element of a deliberate indifference claim.  This element requires Hamer to show that McGinty "recognized and disregarded a substantial risk of harm" to Hamer.  *Gunther*, 561 F. App'x at 502.  The medical evidence shows that on the relevant date, Hamer was walking with a steady gait and no swelling or other irregularity had been noted with his ankle.  Hamer has not presented any evidence that McGinty subjectively believed that his ankle presented a substantial risk of harm to him.  What Hamer presents is a disagreement over medical treatment and whether his ankle required

13

ice or a crutch, which "implicate[s] medical judgments and not the Eighth Amendment." *Hale v. Corr. Med. Servs., Inc.*, No. 1:10-CV-1008, 2012 WL 4382361, at *9 (W.D. Mich. Aug. 21, 2012); *report and recommendation adopted*, 2012 WL 4381917 (W.D. Mich. Sept. 25, 2012).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Because Hamer has not met either element to prove a claim of deliberate indifference, McGinty is entitled to summary judgment on Hamer's deliberate indifference claim.

B.     Retaliation

1.     Standard

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and

14

(3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  With respect to causation, "bare allegations of malice" are insufficient to state a constitutional claim; a plaintiff must instead establish that his protected conduct motivated the allegedly retaliatory action taken.  *Id.*, at 399.

Once the plaintiff has met his burden of establishing that his protected conduct was the cause of the alleged adverse action, "the burden of production shifts to the defendant."  *Id.*  "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."  *Id.*

2.      Application

Hamer alleges that McGinty retaliated against him for filing grievances when she issued him a misconduct ticket and when she threatened to put him in DWH[6] until she could have him transferred if he did not sign off on one of the grievances.  (ECF No. 69, PageID.727).  As a preliminary matter, the undersigned has already determined that Hamer's retaliation claims were not exhausted.  *See*

---

[6] Hamer does not define DWH in his amended complaint, but in the first complaint he filed he stated that McGinty threatened to put him in the hospital.  (ECF No. 1, PageID.14).  The undersigned therefore assumes that Hamer is talking about the Duane Leonard Waters Hospital, a hospital within the Michigan prison system.

ECF No. 65.  However, because McGinty addressed Hamer's retaliation claim in her motion, a discussion of the merits is warranted.[7]

The parties do not dispute that Hamer meets the first element of a retaliation claim because the filing of grievances is constitutionally protected conduct under the First Amendment.  *O'Brien v. Michigan Dept. of Corrections*, 592 F. App'x 338, 343 (6th Cir. 2014).  However, Hamer cannot meet the second and third elements for either of his claims.  Although a misconduct can be considered an adverse action under the second element of a retaliation claim, *see Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007), Hamer has not provided any evidence to show a causal connection between his grievance and the misconduct ticket.  Hamer has not put forth any evidence that McGinty was even aware of the grievance at the time she wrote the misconduct ticket, much less that it motivated her decision to issue the ticket.  Hamer filed his grievance on April 13, 2022, but it was not received until April 18, 2022.  (ECF No. 23-3, PageID.141).  McGinty wrote the misconduct ticket on April 15, 2022, before Hamer's grievance was received. (ECF No. 69, PageID.711).  Indeed, in McGinty's declaration she attests that she was not aware of Hamer's grievance when she wrote the misconduct report.  (ECF No. 89-4, PageID.943).  Hamer has not otherwise alleged or provided any evidence

---

[7] Exhaustion is a waivable defense.  *Allen v. Shawney*, No. 11-CV-10942, 2013 WL 2480658, at *4 (E.D. Mich. June 10, 2013) (citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 323 (6th Cir. 2010)).

16

that he told McGinty about the grievance or that he spoke to her regarding the grieved conduct.  Hamer's claim based on the misconduct ticket therefore fails to meet the third element of a retaliation claim sufficient to survive summary judgment.

Finally, Hamer's alleges that McGinty retaliated against him by threatening to send him to DWH until she could get him transferred.  Putting aside that Hamer has not offered any evidence to support this assertion, Hamer has not shown that the threat of transfer constitutes an adverse action.  Hamer alleges that DWH "is essentially the hole or SHU having very little to no liberties" and "inmates who[] are serving sanctions for tickets get more liberties than those in DWH confined." (ECF No. 69, PageID.717).  However, for transfer to DWH to be considered an adverse action, the threat of it must deter a person of ordinary firmness from continuing to engage in that conduct.  The Sixth Circuit has already determined that transfer to another prison facility does not constitute an adverse action unless the new prison assignment is more dangerous.  *Belser v. Alton*, No. 15-2024, 2016 WL 11848552, at *2 (6th Cir. Oct. 4, 2016); *Hermansen v. Kentucky Dept. of Corrections*, 556 F. App'x 476, 477 (6th Cir. 2014).  The same can be said for temporary transfer to a hospital.  Hamer has not alleged that he would be in danger or that there would otherwise be any threat to his wellbeing by being transferred to DWH.  The threat would therefore be unlikely to deter a person of ordinary

firmness from continuing to file grievances and as such, it does not constitute an adverse action.

In sum, exhaustion issue aside, Hamer's First Amendment retaliation claim fails on the merits.

### C.    Qualified Immunity

#### 1.    Standard

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Created to protect government officials from interference with their official duties, qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (punctuation modified).  After a defending official initially raises qualified immunity, the plaintiff bears the burden of showing that the official is not entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d at 472.

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the facts in the light most favorable to the plaintiff, [it] determine[s] whether the

allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the right was clearly established at the time of the incident." *Id.* The steps may be considered in either order, so "[i]f the court concludes that no constitutional violation has occurred, there is no need to address whether the alleged right was clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

2.       Application

McGinty argues that she is entitled to qualified immunity because Hamer cannot prove a violation of his constitutional rights. As explained above, Hamer has failed to create a genuine issue of material fact regarding whether his constitutional rights were violated. In other words, no reasonable juror could find a constitutional violation on the record before the Court. Therefore, McGinty is also entitled to qualified immunity, as "no constitutional violation has occurred." *Kinlin*, 749 F.3d at 577.

VI.     Conclusion

For the reasons stated above, the undersigned RECOMMENDS that McGinty's motion for summary judgment, (ECF No. 89), be GRANTED. If this recommendation is adopted, the case will be closed.

Dated: October 28, 2024                s/Kimberly G. Altman
Detroit, Michigan                   KIMBERLY G. ALTMAN
                                   United States Magistrate Judge

## <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 28, 2024.

<u>s/Kristen Castaneda</u>
KRISTEN CASTANEDA
Case Manager